Donahue, J.
It is contended on the part of the plaintiff in error that it conclusively appears from the facts stated in the petition that Edwin S. Roth died from an occupational disease, and that injury or death resulting from such diseases contracted in the course of employment is not within the provisions of the Workmen's Compensation Act and cannot be made the basis of a claim for compensation from the insurance fund provided by that act.
If this is true, it is the end of the case, and the judgment of the court of appeals must be reversed and that of the common pleas affirmed. The Industrial Commission of Ohio et al. v. Brown, 92 Ohio St., 309.
In the brief of counsel for plaintiff it is said that “the question as to whether or not this is an occupational disease is a medical question rather than a question of law."
*37 If that statement is correct, then it was error for the trial court to sustain the demurrer, and it should have submitted the question to a jury under proper instructions, upon such expert medical evidence as might have been offered by the parties to the suit.
There is, however, no dispute as to the facts in this case. Nevertheless, it does not always follow that where the facts are not in dispute the jury has no function to perform. Sometimes the ultimate question at issue is a proper one to be submitted to the jury, even where there is no dispute as to the primary facts and combination of circumstances from which the conclusion is to be deduced; as, for instance, in a negligence case, where the admitted facts do not constitute negligence per se, it is the province of a jury to determine whether they do oído not constitute negligence under the peculiar circumstances of each particular case.
On the other hand, where the facts are admitted or conclusively established, and the proper judgment to be entered involves only the construction of the law applicable to such facts, the question is for the court, and not for the jury. Cornell v. Morrison, 87 Ohio St., 215.
We are of the opinion that this case comes within the latter class, although it is very close to the dividing line, and we can readily see how a very slight variance in the facts, in a similar case, might present a jury question.
In this case it is admitted that the deceased was a common laborer, and that the disease of lead poisoning is not incident to his regular occupation, *38 but, on the contrary, is incident to the work in which he was employed for the two days preceding his illness.
“Occupation” has been defined by the courts of this and other states to be “that particular business, profession, trade, or calling, which engages the time and efforts of an individual.” In other words —the employment in which one regularly engages, or the vocation of one’s life. A disease contracted in the usual and ordinary course of events, which from the common experience of humanity is known to be incident to a particular employment, is an occupational disease, and not within the contemplation of the Workmen’s Compensation Law. '
It is within the common knowledge of men that lead poisoning is a disease incident to the occupation of a painter, and if this young man, although employed as a common laborer, undertook in the course of his employment to do the work of a painter, and by reason thereof, in the natural and due course of events, contracted this disease as an incident thereto, it is the end of the controversy.
But it is also common knowledge that in the occupation of a painter the exposure is so slight that this disease is slow and insidious in its development, and chronic in its character. In fact, the history of the development of this disease in this occupation shows that it is a matter of years instead of days, and that many escape altogether. There are many other occupations, perhaps as many as eighty-five in the aggregate, to which this disease is also incident, and in some of them the exposure is so great that the disease is of far more rapid de *39 velopment. Lead smelting and the making and handling of lead carbonates are by far the most hazardous of these employments, yet a case of lead poisoning developed in five weeks by a man employed in a white lead factory, who was furnished no respirator and was not advised that the white dust on his hands and mustache was poison, is reported by medical authorities as an extreme case of the rapid development of this disease.
Lead poisoning of course may be acute if the exposure is so extraordinary and overwhelming as to produce immediate results. Time, after all, is but a relative circumstance, and the amount of time requisite for the development of this disease is always in the inverse ratio to the extent and character of the exposure.
In the construction of the law it is the duty of a court to give to words their usual and ordinary meaning, such meaning as they import to mankind in general, and not a forced or unusual definition, which may in its last analysis be technically correct, but wholly at variance with the common understanding of men.
Applying this fair and reasonable rule of interpretation to the term “occupational disease,” it follows that an occupational disease is not only a disease incident to a particular occupation, but that it is a disease developed in the usual and ordinary manner by reason of and because of the occupation in which the person suffering therefrom is or was engaged.
While the fact is well known and recognized generally that certain occupations are the prolific *40 sources of lead poisoning, yet it by no means follows that a case of lead poisoning cannot be developed in other ways than by engaging in such occupation. There are cases recorded by reputable medical authorities where acute lead poisoning has developed immediately by sudden exposure to large quantities of dust, vapor, and gases from broken packages of lead, and from fumes of molten lead, but such cases are the result of accident or misadventure, that may happen to any person, regardless of his occupation.
If, therefore, it were conceded that in the occupation of a painter the disease of lead poisoning might in the ordinary and usual course of events develop in two days, yet the facts pleaded in this petition, if true, conclusively show that this disease did not occur in that way, although the deceased was temporarily engaged in painting, but on the contrary that his injury was caused wholly and entirely by accident and misadventure, while heating the paint in a small, unventilated room, where the deadly fumes pervaded the atmosphere he was compelled to breathe.
An accident is some happening that occurs by chance, unexpectedly, and not in the usual course of events. It is something that might possibly be prevented by the exercise of due care and caution.
In this particular 'case, if the young man had understood the deadly nature of the fumes he was breathing, he could easily have escaped all danger by opening the doors and windows of the room in which the paint was being heated, and the fact that the accident might easily have been avoided readily *41 distinguishes it from an occupational disease; for, notwithstanding the fact that more than two centuries ago occupational diseases had become so well known as to justify their treatment in a separate volume in the medical literature of that day, nevertheless, science has been unable to discover any positive means and methods of prevention.
These diseases are incident to certain employments, yet with full knowledge of that fact human foresight cannot defend against them. The fact that this injury resulted in a disease that is incident to divers occupations does not bring it within the doctrine announced by this court in the case of Industrial Commission v. Brown, supra, for this accident might have happened to any person, regardless of occupation, who had occasion to enter this building at the time this folly was being perpetrated.
We are therefore of the opinion that the term “occupational disease” must be restricted to a disease that is not only incident to an occupation, but the natural, usual and ordinary result thereof; and held not to include one occasioned by accident or misadventure.

Judgment affirmed.

Wanamaker, Jones and Matthias, JJ., concur.